Stefan Savic
Brian Grossman
William Whewell
**SAVICFOLEY P.C.**
315 Madison Avenue, Suite 3047
New York, New York 10017
Telephone:      (646) 357-3239
Facsimile:       (646) 776-5743
ssavic@savicfoley.com
bgrossman@savicfoley.com
wwhewell@savicfoley.com
*Attorneys for Plaintiff Erika Hereford*

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ERIKA HEREFORD,** | Case No.: |
| Plaintiff**,** | |
| -against- | **COMPLAINT** |
| **TAMALE, LLC d/b/a ACAPULCOS MEXICAN FAMILY RESTAURANT & CANTINA, and SERGIO HEREFORD,** | **PLAINTIFF DEMANDS A TRIAL BY JURY** |
| Defendants**.** | |

Plaintiff Erika Hereford ("Hereford" or "Plaintiff"), by and through her attorneys SavicFoley P.C., hereby alleges as follows:

### NATURE OF THE ACTION

1. Tamale, LLC d/b/a Acapulcos Mexican Family Restaurant & Cantina ("Acapulcos" or the "Restaurant") employed Hereford as a server and bartender for nearly ten years without ever compensating her for her overtime work—the Restaurant never paid for hours in excess of 40 hours a week, much less the required overtime for working in excess of 40 hours—notwithstanding her routinely working more than 40 hours per week.

1

2. While Acapulcos advertises that "[e]veryone works together, not only as a team, but as a family" Acapulcos does not compensate its employees as required by the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and Connecticut Minimum Wage Act, Connecticut General Statutes § 31-60a and § 31-76c.

## PARTIES

3. Plaintiff, Erika Hereford is an individual residing in Stratford, Connecticut.

4. Defendant Tamale, LLC ("Tamale" and, together with Acapulcos, the "Defendants") is a Connecticut limited liability company with the registered address at 2419 Main Street, Stratford, Connecticut 06615.

5. Defendant Tamale, LLC d/b/a Acapulcos Mexican Family Restaurant & Cantina is a Connecticut limited liability company with the registered address at 2419 Main Street, Stratford, Connecticut 06615 and has a restaurant at the same address (the "Stratford Location"), with several other locations in Connecticut and Massachusetts.

6. Defendant Sergio Hereford is one of the owners of the Restaurant and a member and owner of Tamale. Sergio Hereford is Plaintiff's brother.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b)(1), because Defendants reside within the district. Moreover, all events relevant to this action occurred within the district.

## **FACTUAL BACKGROUND**

*Hereford's Employment with Defendants*

9. Until March 21, 2021, Hereford worked for the Defendants at their Stratford Location as a server that would occasionally be required to bartend for approximately ten years.

10. While Defendants at one time had a time-keeping mechanism in place, they did not utilize the actual times entered on the clock for payroll and seemingly used it only for show.

11. Rather, Hereford's hours were determined specifically based on her work schedule and not the hours that she actually worked.

12. Pursuant to Hereford's work schedule, Hereford was supposed to work only the following hours:

   a. Monday: 11:00 a.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (8 hours total)
   b. Tuesday: Off
   c. Wednesday: 11:00 a.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (8 hours total)
   d. Thursday: 12:00 p.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (7 hours total)
   e. Friday: 12:00 p.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (7 hours total)
   f. Saturday: 12:00 p.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (7 hours total)
   g. Sunday: 12:00 p.m. until 2:00 p.m. and 5:00 p.m. until 10:00 p.m. (7 hours total)

13. Hereford's total work "schedule" was for 43 hours per week as demonstrated in the previous paragraph.

14. However, Hereford was never paid for more than 40 hours per week, much less paid the required time-and-a-half that was required.

15. But Hereford's work "schedule" did not represent all the hours that Hereford was required to work as Hereford was required to come in before the start of her shift and remain after her shift in order to prepare the restaurant for opening and help close the restaurant at the end of the day.

16. Hereford would regularly arrive early in order to prepare the bar area for customers, which included things such as cutting fruits to be used in drinks and otherwise preparing the bar area for customers.

17. Hereford also was required to stay at the restaurant after her shift almost regularly for at least 30 minutes and sometimes for up to 2 hours, including staying later than the end of her early shift because someone did not show up on time, or to help clean up—despite having childcare requirements that she needed to pick her child up from school at 2:45 p.m. each day—and at the end of her late shift for multiple reasons including because parties had not yet finished at the restaurant, to clean up the bar area, and more.

18. On Sundays, Hereford would be required to stay for almost two hours because that was a bigger cleaning day.

19. Hereford performed almost every task at the restaurant besides actually cooking the food, including answering the phone for takeout orders, bartending, serving food, cleaning, preparing for the restaurant to open, cleaning after the restaurant closed, and more.

20. On holidays, Hereford would also be required to work from 11:00 a.m. until 10:00 p.m. with no breaks and only being permitted to eat something while standing in the kitchen for a few minutes when she could find the time. She did not receive a designated meal break.

21. The restaurant was only closed on three days of the year: Easter Sunday, the Fourth of July, and Christmas.

22. Despite all of this additional time spent at the restaurant, Hereford was not paid her regular hourly rate for the times she worked before or after her shift, let alone the time and a half that Defendants were required to pay her for every hour in excess of 40 hours per week.

23. Sergio Hereford was the owner and manager that decided when people worked and how much they earned.

*Hereford's Tips*

24. Hereford also was not paid the full amount of the tips that she received, despite the Defendants claiming that she did receive those tips on her pay stub and on her W-2 (and likely on their own tax documents) in order to maintain paying Hereford below the minimum wage.

25. Regardless of the tip amount, Hereford would be required to provide the bus boys and bar-backs with four percent of the total bill.

26. However, the Defendants would always include that Hereford received 10% of the total bill on her paystub.

*The Altercation Between Hereford and Other Employees*

27. On or around March 21, 2021, Hereford was confronted by two other employees after Hereford told the other employees that she would not be performing their duties any longer because she needed to focus on her own work.

28. The two employees became irate and began cursing and screaming at Hereford in front of customers in both English and Spanish, requiring that a member of the kitchen staff physically restrain the two employees.

29. The two employees are also known to have altercations with each other in the restaurant in the often result in physical confrontations between the two, such that Hereford truly believed that they would hurt her if they were not being restrained.

30. Sergio Hereford witnessed the entire event.

31. Yet, when Hereford asked if Sergio Hereford was going to anything about the way the two women were speaking to and threatening Hereford, Sergio Hereford simply told Hereford that he would not.

32. At that point, Hereford had enough of working at the restaurant, being treated the way she was by the other staff and management, and by not being paid anywhere near the full amounts that she was entitled.

33. Hereford quit her job on the spot after Sergio Hereford refused to intervene in the altercation.

34. Upon Hereford telling Sergio Hereford that she quit, Sergio Hereford told her "good" and that, in essence, it was one less person to deal with.

35. Despite Hereford promptly notifying Sergio Hereford of the incident, which he witnessed in its entirety, Defendants failed to take any steps to investigate or otherwise act, leaving Hereford with no choice but to leave her employment or risk additional confrontations with those two employees.

36. After ten years of being a faithful employee, Hereford could no longer handle working under the conditions that she was exposed to and she left her employment on March 21, 2021.

*Sergio Hereford's Liability as an Employer*

37. Throughout Plaintiff's employment, Sergio Hereford made personnel decisions at the Restaurant, disciplined employees, hired and fired employees, set their wages, and otherwise controlled the terms and conditions of their employment.

38. Throughout Plaintiff's employment, Sergio Hereford made payroll decisions at the Restaurant, and retained time and wage records.

39. Sergio Hereford managed day-to-day operations of the Restaurant, communicating all managerial decisions, including the hiring and firing of employees, employee scheduling, and payment of wages.

40. Throughout Plaintiff's employment, Sergio Hereford exercised sufficient control over the Restaurant's operations to be considered Plaintiff's employer under the FLSA and relevant Connecticut law.

## FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Minimum Wage Violations)

41. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

42. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiff.

43. Defendants were required to pay to Plaintiffs the applicable minimum wage rate for each hour worked up to forty in one week.

44. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because:

   a. Defendants required Plaintiff to spend more than twenty percent of her shift performing non-tipped work; and

   b. Defendants were required to, but upon information and belief failed to, inform Plaintiff of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m).

45. Defendants failed to pay Plaintiff the minimum wage to which she was entitled under the FLSA.

46. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

47. As a result of Defendants' willful violations of the FLSA, Plaintiff suffered damages in being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**(Connecticut General Statutes § 31-58, *et seq.* – Minimum Wage Violations)**

48. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

49. By the conduct set out above, Defendants have denied Plaintiff minimum wages in violation of Connecticut General Statutes §§ 31-58(i) and 31-60(a).

50. Defendants' violation of the Connecticut General Statutes was made in bad faith and was arbitrary and unreasonable.

51. As a result of Defendants' unlawful conduct, Plaintiff suffered a loss of compensation from employment that is due and owing to her.

## THIRD CAUSE OF ACTION
**(Fair Labor Standards Act – Unpaid Overtime)**

52. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

53. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiff as a waitress, an employment position which engaged the employees in commerce, as defined under 29 U.S.C. §§

203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

54. In the performance of her duties for Defendants, Plaintiff worked substantially more than forty hours per week, yet did not receive overtime compensation—much less any compensation—for the work, labor, and services she provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.

55. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a), as evidenced, *inter alia*, by Defendants' refusal to use the time clock in the work place.

56. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**(Connecticut General Statutes § 31-58, *et seq.* – Unpaid Overtime)**

57. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

58. By the conduct set out above, Defendants have denied Plaintiff overtime wages in violation of Connecticut General Statutes § 31-60a and § 31-76c.

59. Defendants' violation of the Connecticut General Statutes was made in bad faith and was arbitrary and unreasonable.

60. As a result of Defendants' unlawful conduct, Plaintiff suffered a loss of compensation from employment that is due and owing to her.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment:

a. Declaring that Defendants have violated the minimum and overtime wage provisions of the FLSA and Connecticut wage law;

b. Declaring that Defendants' violations of the FLSA and Connecticut wage law were willful;

c. Awarding Plaintiff unpaid minimum and overtime wages;

d. Awarding Plaintiff liquidated damages in an amount equal to the amount of wages found to be due;

e. Awarding actual damages to be established at trial;

f. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees as permitted by the FLSA and Connecticut wage law;

g. Awarding Plaintiff punitive damages in an amount to be determined at trial to punish Defendants for their wanton, reckless, and malicious acts described herein, and to protect society against similar acts;

h. Awarding Plaintiff pre- and post-judgment interest in the statutory amount as permitted by the FLSA and Connecticut wage law; and

i. Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

|  |  |
|---|---|
| Dated: New York, New York<br>May 12, 2021 | Respectfully submitted,<br><br>By: _____<br>Stefan Savic<br>Brian Grossman<br>William Whewell<br>**SAVICFOLEY P.C.**<br>315 Madison Avenue, Suite 3047<br>New York, New York 10017<br>Telephone:   (646) 357-3239<br>Facsimile:    (646) 776-5743<br>ssavic@savicfoley.com<br>bgrossman@savicfoley.com<br>wwhewell@savicfoley.com<br>*Attorneys for Plaintiff Erika Hereford* |